| | |
|---|---|
| **BEACON SALES ACQUISITION, INC. D/B/A ARZEE SUPPLY CORPORATION,**<br><br>        **Plaintiff,**<br><br>v.<br><br>**BOARD OF TRUSTEES OF THE TEAMSTERS INDUSTRIAL EMPLOYEES PENSION FUND; THE TEAMSTERS INDUSTRIAL EMPLOYEES PENSION FUND; BOARD OF TRUSTEES OF THE TEAMSTERS INDUSTRIAL EMPLOYEES WELFARE FUND; AND THE TEAMSTERS INDUSTRIAL EMPLOYEES WELFARE FUND,**<br><br>        **Defendants.** | Civ. No. 19-19106 (KM) (JBC)<br><br>**AMENDED OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Pending before the Court is a motion for preliminary injunction filed by the plaintiff, Beacon Sales Acquisition, Inc. d/b/a Arzee Supply Corporation ("Beacon"). (DE 3). Beacon seeks to enjoin an arbitration commenced by defendants: the Teamsters Industrial Employees Pension Fund (the "Pension Fund") and Welfare Fund (the "Welfare Fund," and together with the Pension Fund, the "Funds"); and the Boards of Trustees of the Pension Fund and Welfare Fund (collectively, unless otherwise specified, "the Trustees"). The arbitration hearing is scheduled to commence on December 16, 2019.

Defendants allege that Beacon was delinquent on contributions that were due under collective bargaining agreements (CBAs) signed by Beacon as the employer. Defendants also assert that Beacon contributed on behalf of ineligible employees, causing Defendants to pay medical expense benefits that were not in fact due. Each of these claims, say the Funds, is to be resolved via

1

arbitration in accordance with the terms of the trust indentures. The Funds maintain that Beacon is bound by the arbitration clauses in the trust indentures because the CBAs signed by Beacon explicitly or impliedly incorporate the terms of the trust indentures.

Beacon asserts that it never agreed to arbitrate these claims. Although Beacon signed the CBAs, it says it never signed the trust indentures and therefore cannot be bound by the indentures' arbitration clauses.

A preliminary word about the backwards procedural posture of this case: The cases governing arbitrability, cited herein, are commonly decided in the context of a motion to compel arbitration brought by the party who seeks it. This action, however, is brought by the party opposing arbitration, and it seeks a preemptive declaration or injunction that arbitration should *not* occur. The caselaw principles governing arbitrability, *mutatis mutandis*, apply equally to a motion to compel or to enjoin arbitration.

For the reasons provided below, Beacon's motion (DE 3) will be denied in part and granted in part. This Opinion, previously filed (DE 19), is amended at pp. 21–22 in response to the defendant's motion for reconsideration (DE 23).

## I.     Summary[1]

Plaintiff Beacon is a distributor of roofing materials. The Fund defendants are multiemployer pension plans within the meaning of the

---

[1]    Citations to the record will be abbreviated as follows. Citations to page numbers of docket items refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

| | | |
|---|---|---|
| "DE" | = | Docket entry number in this case. |
| "Compl." | = | The complaint filed in this action (DE 1). |
| "CBA" | = | Any of three collective bargaining agreements, collectively spanning 2011–2019 (DE 18; excerpted DE 14-1). |
| "Trust Indenture" | = | Third Restated Agreement and Declaration Trust of Pension Fund / Welfare Fund (DE 3-4; DE 3-5). |

2

Employee Retirement Income Security Action, as amended ("ERISA"). (Compl. ¶¶ 9, 11).

### A. The CBAs

Beacon is a signatory to a series of CBAs with Teamsters Local Union No. 560. These govern the wages, hours, and conditions at four Beacon facilities in New Jersey and New York. Each of the CBAs covers a period of three years; the CBAs at issue cover (1) January 1, 2011 to December 31, 2013; (2) January 1, 2014 to December 31, 2016; and (3) January 1, 2017 to December 31, 2019. (DE 14-1 at 6–21). The relevant provisions of the CBAs are materially identical. (DE 18-1, 18-2, 18-3).

The CBAs require Beacon to remit contributions to the Funds on behalf of covered employees. (Compl. ¶ 17). In each CBA, pursuant to Article 14, Section 1, Beacon agreed:

> to make contribution at the rates set forth below and participate in the TIE Pension and Welfare Funds, *pursuant to the Trust Indenture, its rules and regulations as amended.*

(DE 14-1 at 6–21 (*emphasis* added)). Monthly contribution obligations are established in each CBA based on the number of hours each employee worked. Under Section 4, Beacon also agreed to allow the Funds to inspect and audit its records in order to verify contributions remitted by Beacon to the Funds. (*Id.*).

### B. The Trust Indenture

As noted above, the CBA refers to the "Trust Indenture." The trust indentures at issue here were entered into on April 10, 2014. They are (a) the Third Restated Agreement and Declaration Trust of Teamsters Industrial Employees Pension Fund and (b) the Third Restated Agreement and Declaration Trust of Teamsters Industrial Employees Welfare Fund. (DE 3-4

and DE 3-5). Those two agreements are identical, except that the first is for the Pension Fund and the second for the Welfare Fund."[2]

Beacon is not a direct signatory to the Trust Indenture; the parties to the Trust Indenture are the trustees of the relevant Fund, consisting of union and employer trustees. Each Trust Indenture begins by acknowledging that it is being executed in connection with CBAs that will endow the Funds:

> WHEREAS, the Union will be continuing to enter into collective bargaining agreements with the Employers and with other participating Employers requiring amongst other things, payment by said Employers to the Pension Fund [or Welfare Fund] of periodic contributions for the purpose of providing inter alia, for eligible employees, through the self-administration, a plan of retirement benefits. . .

(DE 3-4 at 2). Article I, Section 4, goes on to define "Employer" as follows:

> **an Employer who employs Employees, as defined in Section 5 herein below, in a bargaining unit represented by the Union, and pursuant to a collective bargaining agreement** with the Union or participation agreement with the Fund or other writing providing for the payment of contributions, pays monies required therein to the Teamsters Industrial Employees Pension Fund for the purpose of having benefits provided by the Teamsters Industrial Employees Pension Fund, or some of said benefits provided to said bargaining unit employees.

(*Id*. at 4 (*emphasis* added)). "Employees" are defined as "Employees of an Employer, as defined in Section 4 hereinabove, employed in a bargaining unit under a Collective Bargaining Agreement with the Union and for whom the Employer pays required monies to the Teamsters Industrial Employees Pension Fund." (*Id*.)

Article I, Section 10, then defines "Employer Contributions":

> The term "Employer Contributions" or "Employers' Contributions" means any and all payments made by or obligated any and all Employers to the Teamsters Industrial Employees Pension Fund, in accordance with or as required by any collective bargaining agreement, or other agreement or arrangement, between the

---

[2]     Because both Trust Indenture agreements are materially identical, any citation to one agreement (DE 3-4) shall be deemed a citation to the other (DE 3-5).

Employer and the Union for the purposes set forth and expressed in Article II, Section 3 hereof, pursuant to a participation agreement, contribution reports, and as may be provided by the Trustees or in the Teamsters Industrial Employees Pension Fund. ***The Employer, as a function and consequence of having made any contributions to the Pension Fund, shall be and is deemed to have agreed to, and adopted, the terms, provisions, and obligations of this Third Restated Agreement and Declaration of Trust.***

(*Id.* at 5 (***emphasis*** added)).

The Trust Indenture then states its essential purpose: "The Trust Fund shall be held for the exclusive purposes of providing benefits to participants in the Fund." (*Id.* at 7 (Article II). To effectuate this purpose, the Trustees shall have the following audit authority:

> ***to audit Employer contribution records to determine compliance with contribution obligations, and recover expenses incurred in connection with the auditing and collection efforts thereof,*** including but not limited to, requiring payment of interest upon such delinquencies as established herein, to require the posting of security for payment of delinquencies or protect against future delinquencies, establishing penalties in the event of delinquencies, requiring payment of auditing fees, liquidated damages, arbitration fees and court costs, counsel fees, and other costs and expenses which were or would otherwise be incurred by the Fund in connection with the monitoring and collection of Employer contributions as the Trustees deem advisable . . . .

(*Id.* at 7–8 (***emphasis*** added)).

Article III governs "Employer Payments to the Teamsters Industrial Employees" Funds. Under this article, "Employers," such as Beacon, are required to make contributions to the Funds. (*See id.* at 10 (Section 2)). Moreover, this article also endows the Trustees with the power to:

**(1)** "demand, collect, receive and hold Employer contributions" (Section 3);

**(2)** "require any Employer, when so required, to furnish to the Trustees such information and reports as the Trustees may require in the performance of their duties" and to provide the Trustee with a copy of their books and records (Section 4);

**(3)** "enforce against any Employer, and an Employer shall be bound by, all rules and regulations duly formulated and established by the Trustees, . . . ." (Section 5); and

**(4)** "to prescribe such forms as they deem necessary for the Employers to utilize in the making of contributions . . . ." (Section 6).

(*Id.* at 10–11). Article III, Section 10, also provides the Trustees with the ability to commence actions against Employers to recover contributions:

> All suits, arbitrations, and proceedings to recover contributions or any other payments due to the Trustees or the Teamsters Industrial Employees Pension Fund, to recover Fund assets, or to enforce or protect other rights of the Fund, the Teamsters Industrial Employees Pension Fund may institute an action or arbitration in its name as such or in the names of the Trustees. The Trustees are empowered to designate one or more arbitrators to serve as arbitrators on claims of delinquencies brought by the Trustees against the Employer.

(*Id.* at 12).

The parties dispute the relevance of Article X to this dispute. Article X of the Trust Indenture is titled "Claims and Individual Rights." (*Id.* at 27). Article X, Section 1 provides that "No Employer, or Union, shall have any right, title or interest in or to the Trust Fund or any part thereof." (*Id.*). Section 2 concerns the rights of employees, participants, or beneficiaries in the Funds.

Article X, Section 3, is an Arbitration Clause:

> **Section 3. Arbitration Clause.** Any and all disputes arising under this Agreement or arising under any of the Plans, rules and regulations of the Trustees, excluding deadlock disputes but including any dispute raised by any plan beneficiary, or any party claiming any rights under this Trust Agreement, may be submitted by either party to final and binding arbitration before the Board of Arbitration appointed in accordance with this Agreement. The Trustees may appoint a "standing" arbitrator to serve to hear and decide participant or beneficiary challenge to Trustee determination. If no "standing" arbitrator has been appointed, the arbitrator shall be appointed by and in accordance with the rules of the New Jersey State Board of Mediation. The arbitration proceeding shall be conducted under the rules of the N.J. State Board of Mediation. In such arbitrated dispute, each party to the

dispute shall be responsible for its own fees and expenses in preparing and presenting its case, and the fees of the Arbitrator shall be equally split. In order for a disputed claim to be timely asserted, it must be submitted to arbitration within 180 calendar days from the date the aggrieved party received notice of the Trustee's adverse disposition of the claim, or from when the aggrieved party has reason to know or believe that the Trustees disposed of, or refused to act or further consider, the claim.

(Trust Indenture, Article 10, § 3).

Six months after adopting the Trust Indenture, on October 30, 2014, the Trustees adopted resolutions providing "that any action by the Trustees to recover delinquent contributions owed to the [Pension or Welfare] Funds or to compel a payroll audit is subject to binding arbitration before" the Trustees' permanently designated arbitrators, either Gerard Restaino or Ira Cure. (Compl. ¶ 23). The resolution stated that the Trustees could submit to arbitration any disputes arising from "any contributing employer becoming delinquent in its contributions and/or audit amounts to the Fund, or should any dispute arise concerning the obligation to make contributions or to submit to a payroll audit." (*Id.* ¶ 24).

### C. This Action

This action arose after the defendants conducted an audit of Beacon's contributions for the 2013 and 2014 calendar years. As a result of that audit, defendants assert that Beacon owes $49,383.98 in delinquent contributions and interest (the "Contributions Claim"). (Compl. ¶¶ 27–28). Defendants also assert that Beacon improperly made contributions on behalf of employees who no longer qualified for Fund benefits. As a result, the Funds extended coverage to these ineligible employees, and paid medical benefits to those ineligible employees (the "Damages Claim"). (*Id.* ¶¶ 29–31). Initially, defendants asserted that the amount of those unwarranted payments owed by Beacon totaled $466,284.25. (*Id.* ¶ 30). However, defendants subsequently increased their Damages Claim to $838,692 (*Id.* ¶ 31).

To recover on their claims, on July 22, 2019, defendants submitted a demand for arbitration to Arbitrator Restaino. (*Id.* ¶ 29). Beacon objects to the

arbitration; it does not believe that defendants' claims for delinquent contributions and damages are arbitrable. (*Id.* ¶ 33).

On October 18, 2019, Beacon filed a declaratory judgment complaint pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02 seeking the following relief:

> i.    a declaration that Beacon is not bound to submit to arbitration in accordance with the Trusts; or
>
> ii.   in the event the Court finds that Beacon is bound to arbitrate in accordance with the Trusts, a declaration that the Welfare Fund Trustees' Damages Claim is not within the scope of the agreement to arbitrate and an order enjoining the Damages Claim from being arbitrated; or
>
> iii.  in the event the Court finds that the Welfare Fund Trustees' Damages Claim is subject to arbitration, a declaration that it is not subject to arbitration before the "permanently designated arbitrator" selected by the Welfare Fund Trustees and an order enjoining the Welfare Fund Trustees from arbitrating the Damages Claim before their "permanently designated arbitrator" and requiring the parties, or the Court if the parties cannot agree, to appoint an independent arbitrator to arbitrate the Damages Claim . . .

(Compl. ¶ 7).

Beacon then moved for an order enjoining the arbitration. (DE 3). The Funds opposed that motion. (DE 14). On November 1, 2019, I held a show cause hearing, at which I heard arguments of counsel. (DE 16).

## II.   Legal Standard

### A. Preliminary injunction

"Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). In order to obtain a preliminary injunction, the moving party must show the following:

> (1) a reasonable probability of eventual success in the litigation,[3] and (2) that it will be irreparably injured . . . if relief is not granted. . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

*Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (alteration in original; footnote added) (quoting *Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974)). The movant bears the burden of establishing "the threshold for the first two 'most critical' factors . . . . If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179.

The decision to grant or deny a preliminary injunction is within the Court's discretion. *See Am. Express Travel Related Servs., Inc. v. Sidamon — Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012). Moreover, the primary purpose of preliminary injunctive relief is "maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cty.*, 40 F.3d 645, 647 (3d Cir. 1994). Particular scrutiny is required where, as here, the plaintiff is asking the Court to order an affirmative act rather than a stay to maintain the status quo. *See Bennington Foods LLC v. St. Croix Renaissance, Group LLP*, 528 F.3d 176, 179 (3d Cir. 2008) ("where the relief ordered by the preliminary injunction is mandatory and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction."); *Acierno*, 40 F.3d at 653 ("A party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity.").

---

3    In this context, again, "eventual success" means a party's success in compelling or resisting an arbitral forum, as opposed to prevailing on the substantive Contribution or Damages Claims.

## B. Standards to compel arbitration

The principal issue on the preliminary injunction application is whether Beacon may be compelled to arbitrate based on the Trust Indenture's arbitration clauses.

This Circuit's case law has meandered somewhat in defining the proper standard of review of a motion to compel arbitration. The upshot, however, is fairly clear. Where the issue can be decided without evidence, it will be, based on an application of the familiar Rule 12(b)(6) standard to the face of the pleadings. Failing that, however, the Court will permit discovery and decide the issue on a summary judgment standard, pursuant to Rule 56. If there is a genuine issue of fact, summary judgment will be denied and the issues will be tried.

Because arbitration is a "matter of contract" between two parties, "a judicial mandate to arbitrate must be predicated upon the parties' consent." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013) (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)). Pursuant to the Federal Arbitration Act ("FAA"), a court may enforce a contract to arbitrate, but only if the court is satisfied that the "making of the agreement" to arbitrate is not "in issue." *Id.*

In *Guidotti v. Legal Helpers Debt Resolution*, the Third Circuit stated the approach a court must take on a motion to compel arbitration. The judiciary must balance the competing goals of the FAA: the speedy and efficient resolution of disputes, and the enforcement of private agreements. *Id.* at 773. Reconciling sometimes murky precedent in light of those competing interests, the *Guidotti* court reasoned that where "the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or ... documents relied upon in the complaint), . . . the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Id.* at 773-74. Such an approach "appropriately fosters the FAA's interest in speedy dispute resolution. In those circumstances, '[t]he question to

be answered . . . becomes whether the assertions of the complaint, given the required broad sweep, would permit adduction of proofs that would provide a recognized legal basis' for rejecting the affirmative defense." *Id.* at 774 (quoting *Leone v. Aetna Cas. & Sur. Co.,* 599 F.2d 566, 567 (3d Cir. 1979).

"In many cases, however, a more deliberate pace is required, in light of both the FAA's insistence that private agreements be honored and the judicial responsibility to interpret the parties' agreement, if any, to arbitrate." *Id.*

> [The Rule 12(b)(6) standard will not be appropriate] when either the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate or the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did. Under the first scenario, arbitrability not being apparent on the face of the complaint, the motion to compel arbitration must be denied pending further development of the factual record. The second scenario will come into play when the complaint and incorporated documents facially establish arbitrability but the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question in issue. At that point, the Rule 12(b)(6) standard is no longer appropriate, and the issue should be judged under the Rule 56 standard.

> Under either of those scenarios, a restricted inquiry into factual issues will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate and the non-movant must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement. In such circumstances, Rule 56 furnishes the correct standard for ensuring that arbitration is awarded only if there is an express, unequivocal agreement to that effect.

> *Id.* (internal citations and quotations and external citation omitted).

Thus, where the complaint and supporting documents are unclear as to an agreement to arbitrate, or where a plaintiff responds to a motion to compel with additional facts sufficient to place the issue of arbitrability "in issue," then the parties should be entitled to discovery. After limited discovery, a court may

then "entertain a renewed motion to compel arbitration" and should review such a motion under the summary judgment standard.[4]

Here, the procedure is simplified somewhat. At the show-cause hearing, counsel for both sides stipulated that this was a matter properly decided on the briefs, affidavits, and exhibits submitted, without the need for further discovery or testimony.

### III. Discussion

#### A. Likelihood of success on the merits

On this motion for a preliminary injunction, Beacon must demonstrate a likelihood of success on its contention that it is not required to arbitrate. *See SK & F. Co. v. Premo Pharm. Labs.*, Inc., 625 F.2d 1055, 1066 (3d Cir. 1980). That standard requires "a reasonable probability, [but] not the certainty, of success on the merits." *Id.*

In order to resolve this dispute, I must consider whether Beacon agreed to be bound by the arbitration provisions in the Trust Indenture. *Jones Lang LaSalle Americas, Inc. v. Int'l Bhd. of Elec. Workers*, Local 313, No. 16–190, 2017 WL 2957816, at *3 (D. Del. July 11, 2017) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). Because I find that the answer to that question is yes, I must then determine whether the dispute falls within the scope of the Trust Indenture's arbitration provisions. Again, I find that the parties' dispute does fall within the scope of the Trust Indenture's arbitration provisions.

---

[4]     If summary judgment is unwarranted in light of material factual disputes regarding an agreement's enforceability, a court should then proceed to trial "regarding 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' as Section 4 of the FAA envisions." *Id.* (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). In every instance, "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *Id.* (quoting *Par–Knit Mills*, 636 F.2d at 54).

### i. Valid arbitration provision

"[A] party cannot be compelled to arbitrate unless that party has entered into a written agreement to arbitrate that covers the dispute." *Century Indent. Co.*, 584 F.3d at 526. Whether a party has done so is determined by applying "ordinary state-law principles that govern the formation of contracts." *Id.* (quotation and citation omitted).

Beacon argues that it is not subject to the arbitration provisions in the Trust Indenture because it is not a signatory to the Trust Indenture. (DE 3-1 at 12). The CBA, which Beacon concededly did sign, contains an arbitration provision that provides for the arbitration of disputes between Beacon and any employee or the Union. (DE 3-3 at 4). The Funds, however, are not parties to the CBA, and the CBA does not contain any arbitration provision that would require Beacon to arbitrate disputes with the Funds. Nor, says Beacon, does the CBA explicitly incorporate the Trust Indenture; it merely requires the employer to contribute and participate in the Funds "pursuant to" the Trust Indenture. (*Id.* at 12–13).

In the alternative, should Beacon be bound by the Trust Indenture at all, it contends that it is bound only by the "essential" provisions of the indenture. Those essential provisions, says Beacon, are those requiring it to make contributions. They do not include the arbitration clauses. (*Id.* at 13–14(citing *Jaspan v. Glover Bottled Gas Corp.*, 80 F.3d 38 (2d Cir. 1996))).

The Funds respond that the CBA incorporates all of the provisions of the Trust Indenture by reference; that being so, Beacon agreed in the CBA to arbitrate the present dispute. (DE 14 at 11). In defendants' view, Beacon is bound by all the terms of the Trust Indenture, not just the "essential" ones. (*Id.* at 5, 13–14). Defendants point the Court to two cases, which, unlike *Jaspan*, *supra* (cited by Beacon), have held non-signatory contributing employers to the terms of trust agreements governing the fund to which they contributed. (*See id.* at 13–14 (citing *Plumbers & Steamfitters Local 150 v. Vertex Constr. Co.*, 932 F.2d 1443 (11th Cir. 1991); *Santa Monica Culinary Welfare Fund v. Miramar*

*Hotel Corp.*, 920 F.2d 1491 (9th Cir. 1990))). Alternatively, defendants argue, the arbitration provisions *are* "essential" to the Trust Indenture, and would bind Beacon in any event. (DE 14 at 14).

### a) Incorporation of trust agreement terms by implication

The parties devote considerable attention to the question of whether and to what extent a contributing employer, simply by virtue of that status, is impliedly bound by the terms of a trust agreement to which it is not a signatory. I discuss that issue briefly, as essential background. In the end, however, it is not consequential to my decision. *See* Section III.A.i.b, *infra*.

In *Jaspan, supra*, the Second Circuit considered the fund trustees' action to compel an employer, Glover, to produce books and records for audit, and to make a supplementary payment of 50% over and above actual contributions. 80 F.3d at 38. The claimed basis for that supplementary payment was a liquidated damages provision in the trust agreements, applicable where the employer failed to keep adequate records. *Id.* at 38–39. All agreed that the employer was obligated under a CBA to contribute to the funds. Like the employer here, however, Glover objected to the liquidated damages claim, saying that it had never signed the trust agreement containing the liquidated damages provision.

The Court of Appeals agreed that Glover's CBA did not explicitly incorporate the terms of the trust agreement:[5]

> Glover was not a party to the Trust Agreement. Had the parties intended to bind Glover to its terms, they could easily have done so by having Glover sign the Agreement or by referencing it in the collective bargaining agreements. It is true, Glover had agreed through the collective bargaining agreements to pay contributions to the Funds. But this does not justify holding Glover to the terms

---

[5]     Indeed, the fund had sought in an earlier action to reform the CBA to provide that the employer would be bound by the trust agreement, but that action had been settled and discontinued. *Id.* at 39.

of a liquidated damages provision of a trust agreement that it never joined in.

*Id.* at 40. It went on to consider, however, whether the very nature of the relationship gave rise to an implied commitment to be bound by the trust agreement.

*Jaspan,* like the Funds here, cited the Eleventh and Ninth Circuit opinions in *Vertex* and *Miramar, supra.* Both of those cases contain broad language to the effect that a contributing employer, simply by virtue of that status, must necessarily be bound by the trust agreement:

> [T]he *Vertex* and *Miramar* opinions used broad language that would cover this case, (e.g., "We fail to see how [the employer] can avail itself of the benefits of the [f]unds without being subjected to the rules that govern them." *Vertex,* 932 F.2d at 1451) . . . .

*Id.* at 41. Still, said *Jaspan,* those cases stood on a different footing because they involved the fund trustees' fundamental (and ERISA-based) right to locate fund property *via* audits. In the *Jaspan* case, by contrast,

> the Funds [were] seeking to enforce a liquidated damages provision. Such a provision may be helpful to the trustees, but it is not essential to their management of the Funds in the same way as is the right to audit to make sure contributing employers have contributed in accordance with their obligations. Despite the broad language in their opinions, we have no confidence that the Ninth and Eleventh Circuits would have held a non-signatory contributing employer liable had the trust provision in question been, as here, one for liquidated damages—a provision of far less importance to the fund trustees' performance of their duties than their right to audit, and one which raises far greater concerns regarding the fairness of imposing contract liability on a non-signatory.

*Id.* at 41. The Second Circuit therefore declined to hold that the employer was impliedly bound to this liquidated damages provision, which was not "essential" to the trustees' functions in relation to contributing employers.

On this "essential/nonessential" distinction, Beacon builds an argument, or rather a fallback argument. Assuming it is bound at all, says Beacon, it is at

most bound to the essential obligations to make contributions and submit to an audit. The liquidated damages provision, it says, is not an essential term of the Trust Indenture, and it therefore does not impliedly bind a non-signatory contributing employer.[6]

The Third Circuit has not yet ruled on whether an employer, simply by virtue of signing a CBA requiring it to contribute to a fund, is impliedly bound by all the terms, only the "essential" terms, or none of the terms of the fund's trust agreement. For the reasons stated in the following section, however, I do not need to resolve that legal question.

### b) The CBA's explicit incorporation of trust agreement terms

I do not need to resolve that legal question because I find that, in this particular case, the CBA explicitly, not impliedly, incorporated the Trust Indenture by reference. Because Beacon explicitly agreed to be bound by the terms of the Trust Indenture, the question of whether and to what extent it would be impliedly bound, simply by virtue of its status as a contributing employer, does not arise.

Unlike the CBA in *Jaspan,* Beacon's CBA contains language that, while perhaps not perfectly pellucid, is sufficient to incorporate the terms of the Trust Indenture. I find that the parties to the CBA here have done just what *Jaspan* suggested would be necessary to explicitly bind the employer to the terms of the trust agreement: they have "referenc[ed] it [*i.e.*, the trust agreement] in the collective bargaining agreements." 80 F.3d at 40.

---

6    Even on Beacon's terms, I would have difficulty with the notion that the arbitration provision is not essential. The purpose of the Trust Indenture is to "provide benefits to participants to the fund" and the Trustees are provided with numerous avenues through which to effectuate this purpose. (DE 3-4 at 7–8). Both of defendants' claims in the arbitration stem from an audit conducted in 2015. Neither party disputes that under both the CBA and the Trust Indenture, the Trustees had the right to conduct this audit. Any arbitration to recover contribution delinquencies uncovered by the audit would seem to be part and parcel of the audit process. *See Teamsters-Employer Local No. 945 Pension Fund v. Acme Sanitation Corp.*, 963 F. Supp. 340, 348 (D.N.J. 1997) (citing *Jaspan* as "*contra*" authority but finding "collection power" of trustees, including power to initiate arbitration, to be "essential").

In such a case of explicit incorporation, the *Jaspan* analysis is beside the point. For example, in *Central States, Se. & Sw. Areas Pension Fund v. Bomar Nat., Inc.*, 253 F.3d 1011 (7th Cir. 2001), a withdrawal-liability case, the liable employer sought to disallow the post-judgment interest rate provided for in the trust agreement, to which the employer was not a signatory. The trustees pointed to language in the CBA itself, by which the employer authorized the employer representatives to enter into the agreements and ratified those representatives' actions in advance.

> Hi–Way argues that employers are not automatically bound to the terms of a trust agreement by virtue of their participation in a fund. Absent an agreement, this might be true, but in this case there was an agreement. Hi–Way cites *Jaspan v. Glover Bottled Gas Corp.*, in which the Second Circuit found that the employer had not agreed to be bound by the trust agreement. 80 F.3d 38 (2d Cir. 1996). As Central States points out, the court noted [in *Jaspan*] that 'had the parties intended to bind [the employer] to [the trust agreement's] terms, they could easily have done so by having [the employer] sign the Agreement or by referencing it in the collective bargaining agreements.' *Id.* at 40. Here, of course, the trust agreement was specifically referenced.

253 F.3d at 1020.

*Central States,* then, stands for the unremarkable general proposition that, even if the employer is not impliedly bound simply by virtue of its contributor status, it may be explicitly bound by language in the CBA. The question, then, is whether the language in *this* CBA is sufficient to incorporate the Trust Indenture, including its arbitration clause.[7]

---

[7]    At oral argument, I asked whether the employer representative who signed the Trust Indenture had the authority to bind Beacon directly; neither side's counsel had a definitive answer. Because only excerpts of the CBA appeared in the motion papers, I requested that counsel supply a full copy, and they have done so. (DE 18). I have now reviewed the CBA, and I find that it does not contain language of delegation or prospective ratification of the acts of the employer representative, as did the CBA in *Central States.* So if this CBA is to bind Beacon to the Trust Indenture, it must be by a different route.

17

The answer to that question depends on the doctrine of incorporation by reference. *See N. Pension Fund v. Nutrition Mgmt. Servs. Co.*, 935 F.3d 93, 99 (2d Cir. 2019) (clarifying that *Jaspan* did not intend to signal a relaxation of the usual requirements of the doctrine of incorporation by reference). That well-established doctrine of contract law "allows parties to 'incorporate contractual terms by reference to a separate, contemporaneous document . . . including a separate document which is unsigned.'" *Bd. of Trustees of the Int'l Union of Operating Engineers Local 825 Pension Fund v. River Front Recycling Aggregate, LLC*, No. CV 15-8957, 2016 WL 6804869, at *4 (D.N.J. Nov. 16, 2016) (citing 11 Williston on Contracts § 30:25 (4th ed.) (May 2016)). However, "in order to uphold the validity of terms incorporated by reference, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." 11 Williston on Contracts § 30:25. Thus, in *River Front Recycling, supra,* the court denied a motion to dismiss a complaint seeking to compel an audit where the employers signed a one-page "job site CBA," which referred to and incorporated the full version of the CBA. (And that CBA, in turn, incorporated the trust agreements by reference.)

> "Incorporation by reference is proper where the underlying contract
>
> [1] makes clear reference to a separate document,
>
> [2] the identity of the separate document may be ascertained, and
>
> [3] incorporation of the document will not result in surprise or hardship."

*Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003) (paragraph breaks and numbering added).

I begin with the first, "clear reference" requirement, which depends on the language of the CBA itself. In Article 14, Section 1 of each CBA, Beacon agreed "to *make contribution* at the rates set forth below and *participate in* the TIE Pension and Welfare Funds, *pursuant to the Trust Indenture, its rules and regulations as amended.*" (DE 14-1 at 6–21 (*emphasis* added)). Beacon's agreement to contribute to and "participate in" the Funds "pursuant to the

Trust Indenture," as well as the Funds' rules and regulations, manifests a clear intent to be bound by that separate document.

Beacon urges that the phrase "pursuant to the Trust Indenture" is not clear language of incorporation, but rather a "mere reference." (DE 3-1 at 13). It does not suggest a persuasive alternative reason for having "referred" to the Trust Indenture in this manner, if not for purposes of incorporation. Moreover, relevant authority is lacking. Beacon directs this court to, for example, a purportedly analogous case involving the dismissal of a court case "pursuant to" a settlement agreement. (*Id.* (citing *In re Phar-Mor, Inc. Sec. Litig.*, 172 F.3d 270, 274 (3d Cir. 1999)). But this is inapposite. Judicial notice that a settlement agreement exists, as referenced by an order of dismissal, has little to do with the circumstances here.

*N. Pension Fund v. Nutrition Mgmt. Servs. Co., supra,* not cited by the parties, is closer to the mark, from Beacon's point of view. There, the court noted that the CBA merely referred to the parties' "understand[ing]" that a trust agreement would be executed at some time in the future. 935 F.3d at 96. ("The parties understand that the ... Fund will be held and managed under the terms and provisions of an Agreement and Declaration of Trust to be executed in connection with the said Fund ...."). Here, however, there were three essentially identical iterations of the CBA, each for a three-year term, which together covered calendar years 2011 through 2019. (DE 18). The Trust Indenture was simultaneously in effect; the Third Restated versions, for example, were signed on April 10, 2014. (DE 3-4 and DE 3-5). In the CBAs Beacon did not merely state that a trust indenture would be entered into at some time in the future; rather, Beacon agreed to participate in the Funds "pursuant to" that *contemporaneous* Trust Indenture, as well as the rules and regulations of that existing Trust.

The second requirement, that the separate document be clearly identified, is also met. Here, the CBA makes clear reference to the Trust Indenture. It cannot be said that Beacon was unable to ascertain what document was referred to.

Moving to the third requirement, Beacon has no valid claim of surprise or hardship at being required to arbitrate. Since approximately 2011, Beacon has entered into three separate CBAs, all containing the same agreement that it would contribute to and participate in the Pension and Welfare Funds, "pursuant to the Trust Indenture, its rules and regulations as amended." (DE 14-1 at 10). That language, as I have already found, is clear; Beacon not only was aware of the Trust Indenture at the time it signed the CBA, but expressly agreed to participate in the Trusts pursuant to the Trust Indenture. Beacon claims hardship in that the procedures in arbitration lack the formality of court procedures, but it cannot be heard to complain of the hardship of complying with that to which it agreed.

Satisfaction of the three *Glassrobots* requirements establishes that the CBA adequately incorporated the Trust Indenture, including its arbitration clause.

Turning to the Trust's "rules," I find further corroboration for that conclusion. The incorporation is, as it were, at both ends. Although Beacon did not sign the Trust Indenture, it surely was or should have been aware of the nature of the trust that it was agreeing to contribute to. Its own CBA bespeaks knowledge of the existence and binding effect of the Trust's rules and regulations, including amendments thereto. And the Trust Indenture's rules lead back to the Indenture, with its arbitration provision: "The Employer, as a function and consequence of having made any contributions to the Pension Fund, shall be and is deemed to have agreed to, and adopted, the terms, provisions, and obligations of this Third Restated Agreement and Declaration of Trust." (DE 3-4 at 5 (Article I, Section 10 ("Employer Contributions"))).

Accordingly, I find that Beacon has not demonstrated any significant likelihood of succeeding in its quest to resist arbitration. To the contrary, I find that Beacon is bound by the Trust Indenture, as well as the Trust's rules and regulations, because those documents, including the arbitration clause, are incorporated by reference in the CBA.

## ii. Scope of the arbitration provisions

I next consider whether the dispute here falls within the scope of the Trust Indenture's arbitration provisions, which are found at Article III, § 10, and Article X, § 3. Beacon as much as concedes that, if the Trust Indenture binds it, the Contributions Claim would fall within the arbitration provision of Article III, Section 10. (DE 3-1 at 14–15). Even so, says Beacon, the Trustee's Damages Claim would not be arbitrable under that provision. (*Id.* at 14–16).

Defendants counter that the Trust Indenture's arbitration provisions are broad enough to cover both claims. (*Id.* at 10–12). It is possible to quibble, they say, over whether this is a true claim for damages, and whether it falls under Article III, Section 10.[8] But it does not matter, say the defendants; the Damages Claim is subject to arbitration under *another* of the Trust Indenture's provisions: the "any and all disputes" language of Article X, Section 3. (*Id.* at 12).[9] Defendants further submit that, while not conceding the point, they would not object to the Contribution and Damages Claims being heard by separate arbitrators. (*Id.* at 14–15; *see* Section III.C, *infra*.).

Strong federal policies favor arbitration of disputes generally, *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983) (Federal Arbitration Act, 9 U.S.C. § 2, is a "congressional declaration of a liberal federal policy favoring arbitration agreements"), and arbitration of labor disputes in particular, *see Rite Aid of Pa., Inc. v. United Food & Commercial Workers Union, Local 1776,* 595 F.3d 128, 131 (3d Cir. 2010). Defendant, citing *Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364 (1984), objects that the Trust Indenture is not a collective bargaining agreement, and that the *presumption* of

---

[8]    With respect to the Damages Claim, defendants assert that Beacon's nomenclature is misleading. Defendants says they are not seeking "damages" as such but rather are seeking restitution or recoupment of benefits that it paid to ineligible employees as a result of Beacon's wrongful conduct. (*Id.* at 14–15).

[9]    In reply, Beacon further disputed the applicability of this provision, claiming that it only applied to claims for benefits by participants and beneficiaries against the Funds. (DE 15 at 2).

21

arbitrability does not apply.[10] No such presumption is necessary. These disputes are subject to the arbitration provisions contained in Article III, Section 10, and Article X, Section 3.

With respect to the Contributions Claim, I find that the Trustees' efforts to collect delinquent contributions falls within the scope of Article III, Section 10, an arbitration clause that is explicitly dedicated to such claims. Section 10 covers "[a]ll suits, arbitrations, and proceedings *to recover contributions or any other payments due to the Trustees or the Teamsters Industrial Employees Pension Fund*" and it provides that "the Teamsters Industrial Employees Pension Fund may institute an action *or arbitration* in its name as such or in the names of the Trustees." (DE 3-4 at 12 (*emphasis* added)).

With respect to the Damages Claim, I find that the Trustees' efforts to recover benefits overpaid to ineligible Beacon employees falls within the scope of Article X, Section 3, a catchall arbitration clause. Article X broadly covers "Claims and Individual Rights." (DE 3-4 at 27). Section 3 begins by broadly proclaiming that "[a]ny and all disputes arising under this Agreement or arising under any of the Plans, rules and regulations of the Trustees . . . may be submitted to by either party to final and binding arbitration." (*Id.*). This broad arbitration clause excepts only "deadlock disputes." In general, disputes are to be submitted to "the Board of Arbitration appointed in accordance with this Agreement." As to one class of claims, however — "a participant or beneficiary challenge to Trustee determination" — Section 3 provides that a "standing" arbitrator may be appointed. (*Id.*). But no matter who hears the arbitration, it must be conducted in accordance with N.J. State Board of Mediation rules. (*Id.*).

---

[10]    When a CBA contains an arbitration clause, there is a presumption that a dispute is arbitrable unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Lukens Steel Co. v. United Steelworkers of Am. (AFC–CIO)*, 989 F.2d 668, 672 (3d Cir. 1993) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643,650 (1986)).

Here, I find that Article X, Section 3 (incorporated, as I have found, by the CBA) very broadly provides that disputes are arbitrable. Contributions on behalf of no-longer-eligible employees, and the Fund's payment of benefits to such employees fall with the clause's subject matter ("disputes arising under this Agreement or arising under any of the Plans, rules and regulations of the Trustees"). In relation to that subject matter, the "any and all disputes" language of Article X, Section 3, is clearly intended to be very broad indeed. I therefore find that the Damages claim is subject to arbitration.

In sum, then, I find that defendants' claim for delinquent contributions and their claim for damages arising from Beacon's contributions on behalf of ineligible employees are arbitrable.

### B. Irreparable harm

Beacon first argues that irreparable harm can be found *per se* if a party is compelled to arbitrate a dispute beyond the scope of its consent. (DE 3-1 at 16). *See generally PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir. 1990) (forcing a party to arbitrate a claim it did not agree to arbitrate constitutes *per se* irreparable harm).[11] Beacon alternatively argues that it would be harmed if it were required to litigate the Damages claim in a forum that does not afford the procedural and substantive protections of a court of law. (*Id.*).

In general, a party does not suffer "irreparable harm" by being compelled to arbitrate in accordance with its own agreement. My finding, *supra*, that Beacon assented to arbitrate the Contribution and Damages disputes dispenses with the bulk of Beacon's first irreparable-harm argument.

---

[11] "The irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages. This is not an easy burden." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000) (citations omitted); *see Reedy v. Borough of Collingswood*, 204 F. App'x 110, 114 (3d Cir. 2006). Affirmative relief that alters, rather than maintains, the status quo may also be granted, but in such a case "the burden on the moving party is particularly heavy." *Am. Fin. Res., Inc. v. Nationstar Mortgage*, LLC, 2016 WL 8201959, at *2 (D.N.J. 2016).

Beacon's second argument is in the nature of a general complaint; to accept it is to reject the idea of arbitration, which federal law and policy emphatically does not. Beacon offered no specific evidence that it would be deprived of any particular due process rights should it be required to arbitrate the Damages claim. Arbitration proceedings are, by design, more flexible and less cumbersome than court proceedings. It cannot be said, however, that an order to arbitrate a claim that falls within the scope of arbitration clauses in the Trust Indenture deprives Beacon of the ability to meaningfully defend itself or denies it essential procedural and substantive protections.

Beacon has failed to satisfy either of the first two, most essential prerequisites to the granting of a preliminary injunction. I therefore need not decide whether the remaining preliminary injunction factors — (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest — weigh in favor of Beacon. *Reilly*, 858 F.3d 179. Beacon's motion for a preliminary injunction barring arbitration will be denied.

### C. Selection of arbitrator for the Damages Claim

One issue remains, concerning the identity of the arbitrator who should hear the Damages claim. If arbitration of the Damages Claim is ordered, Beacon requests in the alternative that it be heard separately, by an arbitrator other than the one hearing the Contributions Claim.

Article X, Section 3, does not require, or even authorize, the Damages claim to be heard by the Trustee's standing arbitrator. It authorizes the appointment of a standing arbitrator — here, Mr. Restaino — to hear any claim that arises out of a "participant or beneficiary challenge to a Trustee determination." (DE 3-4 at 27). The Damages claim is not such a claim, and is not to be heard by the standing arbitrator. Section 3 provides that cases not submitted to the standing arbitrator shall be submitted to "the Board of Arbitration appointed in accordance with this Agreement," *i.e.,* "by and in accordance with the rules of the New Jersey State Board of Mediation. The

24

arbitration proceeding shall be conducted under the rules of the N.J. State Board of Mediation." (Trust Indenture, Article X § 3, DE 3-4 at 27).

Those State Board rules cover, *inter alia,* selection of an arbitrator. Rule 12:105-3.1, for example, outlines the procedures for nominating arbitrators, including the furnishing of a list of 10 arbitrators from which to choose. *See* https://www.state.nj.us/mediation/references/regulations/Arbitration_Rules_ & _Regulations.pdf.

This knot is cut by a concession. The Funds state that they do not object to an order requiring that these claims be arbitrated separately. I shall therefore order that the Damages Claim be arbitrated separately from the Contributions Claim, and heard by a separate arbitrator in accordance with the rules of the N.J. State Board of Mediation.

## IV.   Conclusion

For the reasons set forth above, Beacon's motion for a preliminary injunction (DE 3) is **DENIED IN PART AND GRANTED IN PART**:

   i.   Beacon's motion to preliminarily enjoin the arbitration of the Contributions Claim is **DENIED**.

   ii.   Beacon's motion to preliminarily enjoin the arbitration of the Damages claim is **DENIED**.

   iii.   Beacon's request, in the alternative, that the Trustees' Damages claim be preliminarily enjoined from being heard before the "permanently designated arbitrator" selected by the Trustees is **GRANTED**. The Damages Claim shall be arbitrated separately from the Contributions Claim, before a separate arbitrator in accordance with the rules of the N.J. State Board of Mediation.

This amended opinion changes certain language in the Court's analysis. *See* pp. 21–22. The result, however, and the order previously entered by the Court (DE 20), remain in effect.

Dated: December 3, 2019.

**Kevin McNulty**
**United States District Judge**